**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICHOLAS M., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 23-22121 (GC) <br><br> **OPINION** |

**CASTNER, District Judge**

     **THIS MATTER** comes before the Court upon Plaintiff Nicholas M.'s[1] appeal from the final decision of the Commissioner of the Social Security Administration denying an application filed by Plaintiff[2] for child's insurance benefits and disability under Title II and/or Title XVI of the Social Security Act, 42 U.S.C. § 423, *et seq.* The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Commissioner's decision is **AFFIRMED**.

---

[1]     The Court identifies Plaintiff by first name and last initial pursuant to D.N.J. Standing Order 2021-10.

[2]     This matter was initially filed by Plaintiff's father. Plaintiff has now reached the age of majority and pursues this appeal on his own behalf. As an adult alleging disability since childhood, a successful application would result in Social Security Disability Insurance Disabled Adult Child ("DAC") benefits to be paid out based on Plaintiff's father's Social Security earnings record.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

On June 17, 2019, Plaintiff's father applied for child's insurance benefits on Plaintiff's behalf, alleging an onset date of September 1, 2004. (Administrative Record ("AR") at 11, 86.[3]) On September 13, 2019, the Commissioner denied Plaintiff's claim, (*id.* at 95), and on December 24, 2019 it denied the claim again upon reconsideration, (*id.* at 107). On August 2, 2022, the Administrative Law Judge ("ALJ") held an Administrative Hearing. (*Id.* at 46-85.) In an August 26, 2022 decision, the ALJ found that Plaintiff was not disabled. (*Id.* at 11-23.) Plaintiff timely requested that the Appeals Council review the ALJ's decision. (*Id.* at 1-7.) On September 12, 2023 the Appeals Council found there was no basis for review of the ALJ's decision. (*Id.* at 1-7.) Plaintiff filed an application to proceed with his appeal *in forma pauperis* in front of this Court on November 8, 2023, (ECF No. 1), which the Court granted on November 21 (ECF No. 2). The same day, the Complaint was filed onto the docket and a summons was issued to the Commissioner of Social Security.

Plaintiff filed his brief on June 6, 2024, (ECF No. 7), and Defendant filed his response on July 8, (ECF No. 8).

### B. THE ALJ'S DECISION

In the ALJ's decision denying Plaintiff's application, the ALJ set forth the five-step process for determining whether an individual is disabled and entitled to disability benefits, and then examined the evidence at each step. (*Id.* at 12-23 (citing 20 C.F.R. § 404.1520(a)).)

---

[3] The Administrative Record certified on January 18, 2024 is available at ECF Nos. 5-1 through 5-7. This Opinion references page numbers in the Record only and not the corresponding ECF numbers. Page numbers for all other cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

### *1.    Steps One through Three of the ALJ's Disability Determination*

Under Section 202(d) of the Social Security Act, for a child to be entitled to insurance benefits the plaintiff must have a disability that began before the age of 22. (*Id.* at 12.) At step one, the ALJ found that Plaintiff was still under the age of 22 as of the onset date of September 1, 2004. (*Id.* at 13.) The ALJ found that Plaintiff had not engaged in any gainful activity since the alleged disability onset date. (*Id.* at 14 (citing 20 C.F.R. § 404.1571).)[4]

At step two, the ALJ determined that Plaintiff suffered from the following "severe" impairments: attention deficit hyperactivity disorder ("ADHD"); learning disorder; borderline intellectual functioning; depressive disorder; and obesity. (*Id.* (citing 20 CFR 404.1520(c)).) The ALJ found that these medically determinable impairments "significantly limit the claimant's ability to perform basic work activities as required by [Social Security Ruling ("SSR")] 85-28." (*Id.*) The ALJ also found that Plaintiff had the following non-severe impairments: history of rash/allergic dermatitis/impetigo; and eczema. (*Id.*) The ALJ determined that these "are non-severe impairments because the medical evidence of record reflects that they have not caused more than minimal limitation in the claimant's ability to perform basic work activities for 12 consecutive months relevant to this decision." (*Id.*) The ALJ further found that references in the record to Plaintiff's otitis media of the right ear, headache, allergic rhinitis, and status post-concussion did not result in any medically determinable impairments because a medically determinable impairment "may not be established solely on the basis of a claimant's allegations regarding symptoms; and . . . must be established by objective medical evidence from an acceptable medical source." (*Id.*)

---

[4]    The ALJ found that while "the claimant testified that he worked after the alleged disability onset date . . . this work activity did not rise to the level of substantial gainful activity [SGA]" as he earned less than $400.00 per month, which did not "rise to SGA levels." (AR 14.)

At step three, the ALJ determined that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 14-15 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) The ALJ considered multiple listed impairments and determined that none were supported by the medical record. (*Id.* at 14-15.) Further, the ALJ found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.05 or 12.11." (*Id.* at 15.) In making this determination, the ALJ cited psychological evaluations from Plaintiff's school, medical records from Dr. Lyudmila Yuzefovich from 2019, and medical records from Rutgers University Behavioral Health Care. (*Id.* at 15-17 (citing Exs. 1F, 6F, 7F, and 8F.)[5])

In assessing the paragraph B criteria related to the disability regulations for evaluating mental disorders, the ALJ found that based on the medical evidence of record Plaintiff had moderate limitations in: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. (*Id.* at 15.) The ALJ also found that Plaintiff had not shown that he met the paragraph C criteria for evaluating mental disorders as "[t]he medical evidence does not show such marginal adjustment that the claimant has minimal capacity to adapt to changes in the environment or some new demands." (*Id.* at 16.) Further, the medical record in evidence "did not show that simple changes or increased demands have led to a deterioration of the claimant's functioning or inability to function outside the home." (*Id.*)

---

[5]   The Court refers to exhibits by the same exhibit numbers used in the Administrative Record.

4

### 2. *Step Four*

At the fourth step, the ALJ outlined his findings of Plaintiff's residual functional capacity ("RFC"), writing:

> [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), with exceptions. The claimant can occasionally climb ramps and stairs; but can never climb ladders, ropes, or scaffolds. The claimant can perform frequent balancing; and can occasionally stoop, kneel, crouch, and crawl. The claimant can never work at exposed heights or work with machinery involving exposed sharp or exposed moving mechanical parts; and can never operate a motor vehicle or operate heavy equipment. The claimant can understand and remember simple instructions, and can perform simple, routine tasks; can use judgment in making work-related decisions commensurate with this same type of work; and can adapt to occasional changes in routine work settings. The claimant can have occasional interaction with coworkers and supervisors, beyond any increased interactions initially required to learn the job, but can never work in tandem with coworkers to complete job tasks, such as with assembly-line work. Lastly, the claimant can have occasional interaction with the public.[6]

[(*Id.* at 17-18.)]

Step four requires that the ALJ follow a two-step process in which he must: (1) determine whether there is an "underlying medically determinable physical or mental impairment(s) . . . that can be shown by medically acceptable clinical or laboratory diagnostic techniques . . . that could reasonably be expected to produce the claimant's pain or other symptoms," and then (2) evaluate the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work related activities." (*Id.* at 18.) In reaching his conclusion

---

[6] The Social Security Administration "determine[s] the physical exertion requirements of work in the national economy" by "classify[ing] jobs as sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 404.1567. Accordingly, medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." (*Id.* § (c).) The regulations find that "[i]f someone can do medium work, . . . he or she can also do sedentary and light work." (*Id.*)

regarding Plaintiff's RFC, the ALJ stated that he relied on "careful consideration of the entire record" and "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.* (citing 20 CFR § 404.1529 and SSR 16-3p).) The ALJ also considered the Plaintiff's testimony, the medical opinions provided, and prior administrative medical findings. (*Id.* (citing 20 CFR § 404.1520c).)

In determining Plaintiff's RFC, the ALJ weighed Plaintiff's past function reports, educational history, and the testimony Plaintiff gave in the hearing regarding his impairments. (*Id.*) The ALJ found that after reviewing the evidence, "the claimant's medically determinable impairments reasonably could be expected to cause symptoms and limitations" but that "to the extent that the claimant alleges that the intensity, persistence, and limiting effects of his conditions result in disability, this is not consistent with the evidence in the record." (*Id.* at 19.) Further, the ALJ found that "with respect to the claimant's ADHD; learning disorder; borderline intellectual functioning; depressive disorder; and obesity, the record reflects that these are severe impairments and the claimant has some resulting limitations" which were reflected in the ALJ's RFC finding. (*Id.*) To reach this conclusion, the ALJ reviewed, in relevant part: a psychological evaluation by Lynna Cirillo, M.A.; Plaintiff's educational records; pharmacological progress notes from Rutgers University Behavioral Health Care; progress notes from Dr. Sherie Novotny; and Plaintiff's Disability Report. (*Id.* at 19-20 (citing Exs. 1F, 1E, 6F, 7F, 8F).)

The ALJ then considered the medical opinions and prior administrative medical findings. (*Id.* at 20.) First, the ALJ examined the Disability Determination Service's ("DDS") initial evaluation, which determined that Plaintiff "had severe ADHD; and a severe learning disorder." (*Id.* (citing Ex. 2A).) The initial evaluator opined that Plaintiff could understand, remember, and execute simple tasks; could persist at work activities sustaining pace and attention during periods

6

of two hours; could adjust to changes; and could interact with the public, coworkers, and supervisors. (*Id.*) On reconsideration, the second DDS consultant found the claimant "had severe ADHD; severe borderline intellectual functioning; and a severe depressive, bipolar, or related disorder. (*Id.* (citing Ex. 4A).) The reconsideration evaluator opined that "the claimant had moderate limitations in understanding, remembering, or applying information; mild limitation interacting with others; moderate limitations in concentrating, persisting, and maintaining pace; and mild limitations in adapting and managing oneself." (*Id.* at 21 (citing Exs. 2A & 4A).) The reconsideration evaluator opined that claimant could understand, retain, and carry out simple instructions and complete simple tasks; could consistently and usefully perform routine tasks on a sustained basis with normal supervision; could cooperate adequately with others; could adapt over time to most changes and task demands; could make simple decisions; and could take appropriate precautions for normal hazards. (*Id.*)

The ALJ found that "these medical opinions are persuasive . . . to the extent consistent with limitations to simple instructions, to simple, routine tasks, to adapting to occasional changes in routine work settings, and for the limitations on interactions incorporated into the above [RFC] finding." (*Id.*) The ALJ found that while "the DDS consultants did not have the benefit of observing the claimant personally" and "did not incorporate the entirety of the claimant's limitations," their findings were "consistent with the overall medical evidence." (*Id.*)

Next, the ALJ reviewed the third-party function report submitted by Plaintiff's mother, which stated that Plaintiff's conditions "adversely affect[ed] his abilities to remember, complete tasks, concentrate, understand, follow instructions, and get along with others." (*Id.* (citing Ex. 3E).) The ALJ categorized this report as a lay statement and observation regarding a claimant's

7

functioning which must be considered, and he did so within the context of the overall record. (*Id.* (citing 20 C.F.R. §§ 404.1502(e), 416.902(e)).)

### 3. *Step Five*

At the fifth and final step, the ALJ concluded that Plaintiff had no past relevant work experience, that he was a young individual at the alleged disability onset date, and that Plaintiff had a high school education. (*Id.* at 21-22.) The ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 22 (citing 20 C.F.R. §§ 404.1569, 404.1569a(a)).) These jobs, based upon the vocational expert's testimony at the hearing, include: hand packager; kitchen helper; and automobile detailer. (*Id.*) The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 1, 2004 through the date of this decision." (*Id.* at 23 (citing 20 CFR §§ 404.350(a)(5), 404.1520(g)).)

## II.  LEGAL STANDARD

### A.  DISABILITY DETERMINATION

An individual is "disabled" and therefore eligible for disability insurance benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The individual's impairment must be severe to the point that the individual cannot engage in his previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where such individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A); *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). A physical or mental impairment is one "that results from

anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner employs a five-step sequential evaluation process for disability claims. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof for the first four steps of the analysis, and the burden shifts to the Commissioner for the fifth step. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007); *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

*First*, a claimant must not have engaged in substantial gainful activity since the alleged disability onset date. 20 C.F.R. § 404.1520(a)(4)(i), (b).

*Second*, the Commissioner considers "the medical severity of [the claimant's] impairment(s)." *Id.* § 404.1520(a)(4)(ii). The claimant must have a "medically determinable physical or mental impairment" or combination of impairments severe enough to limit the claimant's ability to perform basic work activities for a continuous period of at least twelve months. *Id.*; *see also id.* at § 404.1509. The claimant bears the burden of establishing the first two requirements, and failure to satisfy either of them automatically results in denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).

*Third*, if the claimant satisfies his burden at steps one and two, the Commissioner then considers the "medical severity of [the claimant's] impairment(s)." *Id.* § 404.1520(a)(4)(iii). The impairment or impairments must meet or equal a listing in Appendix 1 of C.F.R. Part 404, Subpart P. *Id.* § 404.1520(d). The impairment or impairments are "medically equivalent to a listed impairment . . . if [they are] at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 404.1526(a). If the claimant can make a sufficient showing at step three, he is deemed disabled. *Id.* § 404.1520(a)(iii).

*Fourth*, if the claimant fails to make a sufficient showing at the third step, the analysis proceeds to an evaluation of the claimant's RFC and past relevant work. *Id.* § 404.1520(a)(4)(iv). RFC is the most the claimant can do in a work setting despite his limitations. *Id.* § 404.1545(a)(1). The Commissioner "assess[es] [the claimant's] residual functional capacity based on all the relevant evidence in [his] case record," and "consider[s] all of [the claimant's] medically determinable impairments," including ones that are not "severe" pursuant to §§ 404.1520(c), 404.1521, and 404.1523. *Id.* § 404.1545(a)(1)-(3). The Commissioner also assesses RFC based on "all of the relevant medical and other evidence." *Id.* § 404.1545(a)(3). Past relevant work is "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). "The claimant bears the burden of demonstrating an inability to return to [his] past relevant work." *Plummer*, 186 F.3d at 428 (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)).

*Fifth*, if the claimant is incapable of performing past relevant work, the analysis proceeds to the fifth and final step. *See id.* § 404.1520(a)(4)(iv)-(v); *Plummer*, 186 F.3d at 428. At this step, the claimant must be unable to adjust to other work in light of his RFC, age, education, and work experience to be considered disabled. *See id.* § 404.1520(a)(4)(v), (g). Before denying a claim at step five, the Commissioner must show that the claimant is capable of other work existing "in significant numbers in the national economy." *Id.* § 404.1560(c)(2); *see Poulos*, 474 F.3d at 92.

### B. STANDARD OF REVIEW

District courts may "affirm[], modify[], or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the decision, the court determines whether the ALJ's findings are supported by substantial evidence. *Id.*; *see also Poulos*, 474 F.3d at 91. Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (internal quotation marks and citation omitted).

The district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). This limitation applies "even if [the court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

## III.    DISCUSSION

On review of the ALJ's decision, (*see* AR at 11-23), and the Administrative Record, (*see generally* AR), the Court finds good cause to affirm the Commissioner's decision. In reaching a decision, an ALJ must evaluate the evidence and explain the reasons for accepting or rejecting evidence. *Cotter*, 642 F.2d at 706. Here, the ALJ provided extensive and thorough reasoning for his findings, and the Court therefore determines that the ALJ's findings are supported by substantial evidence.

11

In support of his appeal, Plaintiff advances three arguments: (1) at step three of the sequential evaluation, the ALJ failed to properly combine Plaintiff's four severe mental impairments; (2) the ALJ's opinion did not devote serious consideration to Plaintiff's severe obesity; and (3) the decisional RFC finding Plaintiff could perform medium work is not based on substantial evidence and did not have a sufficiently articulated rationale. (ECF No. 7 at 7-49.) The Court will address these arguments in turn.

### A. THE ALJ'S ASSESSMENT OF PLAINTIFF'S MENTAL HEALTH AT STEP 3

Plaintiff first objects to the comprehensiveness of the ALJ's analysis at step three regarding the combination of Plaintiff's four severe mental impairments. (*Id.* at 6-7.) At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of any one of the impairments in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones*, 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531. "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (quoting 20 C.F.R. § 416.925(a)).

Plaintiff argues that although the combination of all severe impairments and the "comparison of that constellation of symptoms and diagnoses against listing-level severity" is

12

mandatory under the regulations, here it is "absent." (ECF No. 7 at 7 (citing *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149 (3d Cir. 2008).) Plaintiff admits that this analysis does not require "any particular format or magic words," but argues the ALJ's opinion does not provide the required "analysis of the evidence and the requirements of the listing to satisfy the Court that proper comparisons were made and the evidence which might lead to a medical equivalence conclusion was sufficiently covered." (*Id.* at 8-9 (internal quotation marks and citations omitted).)

Specifically, Plaintiff argues that evidence on the record regarding his working memory was not properly incorporated into the ALJ's assessment that Plaintiff has only moderate, rather than marked, limitations in understanding, remembering, and applying information as well as in mental functioning, concentration, persistence, and pace. (*Id.* at 13-14 (citing Ex. 1F).) Plaintiff makes similar arguments regarding the ALJ's incorporation of findings in the same psychiatric evaluation regarding Plaintiff's "variable" concentration and attention span. (*Id.* at 15-16.) Finally, Plaintiff argues that the ALJ erred in finding that Plaintiff only had a moderate limitation in adapting and managing himself because the facts show that: (1) Plaintiff has never lived outside of his parents' home; (2) Plaintiff was tested and has several learning disabilities and intellectual deficits; (3) Plaintiff spent his educational career classified as a special education student; and (4) Plaintiff was let go after 4-5 days from a job at UPS and has made less than $100 a week riding a delivery bicycle for DoorDash. (*Id.* at 23-24.)

The Defendant argues the ALJ's assessment that Plaintiff was not presumptively disabled at step three was based on substantial evidence, and that Plaintiff did not "satisfy his burden to prove that his conditions met or equaled these listings." (ECF No. 8 at 13-14.) Specifically, the ALJ sufficiently articulated his assessment of medical evidence and the opinion of state agency psychologist Dr. Lewis as to the effect of Plaintiff's impairments on his limitations and

13

incorporated those limitations in his assessment. (*Id.* at 16.) Further, where an ALJ "believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, [the ALJ] is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment . . . a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." (*Id.* at 17 (citing SSR 17-2.).)

At step three, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d. Cir. 2000)); *see also Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). It is well-settled that this "requires more than just a conclusory statement that a claimant does not meet the listings." *Burnett*, 220 F.3d at 119. The ALJ did so here. He articulated his assessment of the evidence based on the full medical record, and sufficiently compared Plaintiff's limitations and the impact of his impairments to the levels required by the listings. Further, the evidence in the record substantially supports the ALJ's finding, particularly in light of the mental health assessments and medical record notes showing that Plaintiff's condition remained stable following his high school graduation and his struggle to find work. (AR at 20.)

The district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182; *see also Hartranft*, 181 F.3d at 360 (finding the relevant question is not if the district court "would have decided the factual inquiry differently"). The court must instead "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak*, 777 F.3d at 610 (citing *Schaudeck*, 181 F.3d at 431). Plaintiff's argument that the ALJ should have found marked limitations in the four

14

areas of functioning is unpersuasive, as it does not point to an error by the ALJ, but merely that Plaintiff disagrees with his assessment of the evidence. As the ALJ supported his findings with substantial evidence and an articulation of his assessment of the full medical record in evidence, the Court affirms the ALJ's decision. *See Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).

### B. THE ALJ'S TREATMENT OF PLAINTIFF'S OBESITY

Plaintiff argues that the ALJ did not adequately consider Plaintiff's severe obesity at step three and in his decisional RFC at step four. (ECF No. 7 at 31.) After finding at step two that Plaintiff suffered from severe obesity, the ALJ's opinion referred twice more to the obesity, and found that "even when obesity is considered in combination with the claimant's other impairments, the claimant does not meet or equal any of the listings." (ECF No. 7 at 30-31 (citing AR at 15).) Plaintiff argues that this analysis did not meet the regulation standard for "serious consideration" under the current standards for evaluation of obesity's impact on disability claims. (*Id.*) As such, Plaintiff argues that the ALJ erred in (1) not properly combining obesity with the mental impairments considered at step three in analyzing whether Plaintiff was presumptively disabled and (2) that the ALJ's analysis of Plaintiff's obesity and its impact on Plaintiff's decisional RFC was not sufficiently articulated so as to allow for judicial review. (*Id.* at 30-35.) Defendant contends that the ALJ "fully considered Plaintiff's obesity at step three and the RFC." (ECF No. 8 at 19.)

"[A]n ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with [his] impairments, on [his] workplace function at step three and at every subsequent step." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). There exists no independent listing for obesity, and so a favorable finding at step three will either result from (1) a finding "that an individual with obesity 'meets' the requirements of a listing if [he] has another

15

impairment that, by itself, meets the requirements of a listing"; or (2) if there exists "an impairment that, in combination with obesity, meets the requirements of a listing." SSR 02-1p, 2002 WL 34686281, at *5 (Sept. 12, 2002). "For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." *Id.* This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." *Id.* The regulations direct that a finding of equivalence at step three is appropriate "if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment." *Id.* The ALJ, however, "will not make assumptions about the severity or functional effects of obesity combined with other impairments." *Id.* at *6. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id.*

Here, the ALJ considered Plaintiff's impairments in combination and did not find he satisfied a listing. (AR 15.) Plaintiff has not shown either in the record or in his briefing what obesity-related impairment he has that would meet the medical equivalent of a listing, and he has not sufficiently argued how he would have "prevailed at step three if the ALJ's analysis had been more thorough." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). Here, like in *Holloman*, Plaintiff "offers no answer to that question and therefore no basis for us to remand the case." *Id.* Plaintiff has not shown error on the ALJ's part, or that he did not consider obesity at all, merely that he disagrees with the ALJ's assessment of how the obesity created limitations on Plaintiff when combined with his mental health issues.

Further, the ALJ considered Plaintiff's obesity when assessing Plaintiff's functional capacity, and he incorporated corresponding postural and exertional limitations into the RFC. As

noted above, the ALJ is required to consider the impact of Plaintiff's obesity singly and in combination with other impairments at steps three, four, and five. *Diaz*, 577 F.3d at 504. Here, in assessing Plaintiff's exertional limitations and the ensuing impact on Plaintiff's RFC, the ALJ assessed Plaintiff's athletic history, his job delivering DoorDash via bicycle, and the lack of medical evidence in the record showing impairments due to Plaintiff's obesity. (AR at 15, 21.) The ALJ relied on the medical evidence in the record to assess the impact of Plaintiff's obesity.

Moreover, Plaintiff did not originally claim disability due to his obesity and does not sufficiently argue what limitations Plaintiff suffers from due to his obesity beyond what is incorporated into the RFC. *Alejandra D. v. Comm'r of Soc. Sec.*, Civ. No. 22-175, 2023 WL 2609134, at *10 (D.N.J. Mar. 22, 2023) ("Plaintiff has not pointed to any evidence in the record indicating that obesity impacted her impairments such that the medical equivalency analysis would change or that she required additional RFC limitations due to her obesity."); *see also William J.-P v. Kijakazi*, Civ. No. 20-18081, 2022 WL 909665, at *8 (Mar. 29, 2022) (finding "remand is not appropriate as it would not change the outcome of the case. Plaintiff has not presented any objective medical evidence to meet his burden of showing how his obesity actually impacted his work, as opposed to merely showing that he has obesity and struggles to work.").

The Court finds that the ALJ sufficiently considered Plaintiff's severe obesity at both step three and step four of his analysis.

### C. THE ALJ'S SUBSEQUENT RFC DETERMINATION

Plaintiff further argues that the ALJ did not base the decisional RFC at step four on substantial evidence and did not sufficiently articulate the type of work Plaintiff could sustain. (ECF No. 7 at 35, 45.) Defendant disputes this characterization and argues that the "ALJ fully

articulated his rationale in finding Plaintiff capable of reduced range medium work with additional postural, environmental, and mental limitations." (ECF No. 8 at 23.)

Here, the Court finds that the ALJ's assessment that Plaintiff can perform medium work was based on substantial evidence in the record and should be affirmed. An ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis. Rather, the function . . . is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see also Diciano v. Comm'r of Soc. Sec.*, Civ. No. 18-17383, 2019 WL 6696523, at *5 (D.N.J. Dec. 9, 2019) ("The RFC is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities, but an ALJ does not need to use particular language or adhere to a particular format in conducting his RFC analysis.").

In this case, the ALJ detailed the record evidence that he relied on in a narrative discussion, cited specific medical evidence, medical opinion evidence, and other evidence including the Plaintiff's mother's third-party function assessment, and formulated an RFC that reflected the ALJ's conclusions related to those limitations. The Court agrees with Defendant that the ALJ considered Plaintiff's mental health treatment records, which showed Plaintiff had "largely unremarkable findings, he was able to complete school, he participated in sports, and he maintained relationships," and otherwise clearly had reviewed and referenced the record as a whole. (ECF No. 8 at 24.) Further, as already addressed above, the ALJ discussed Plaintiff's obesity, and incorporated related limitations into his RFC analysis.

Based on a review of the record, the Court finds that the ALJ sufficiently examined the evidence and provided sufficient reasoning regarding his RFC, and the Court will thus affirm. *See Wellington W. v. Kijakazi*, Civ. No. 22-05042, 2023 WL 5551030, at *6 (D.N.J. Aug. 29, 2023)

("[T]he ALJ did not merely announce her RFC determination without providing any support or explanation. She appropriately evaluated the objective medical record . . . and provided a clear presentation of her reasoning . . . ."); *Jose S. v. Kijakazi*, Civ. No. 19-19077, 2023 WL 5125533, at *4 (D.N.J. Aug. 9, 2023) ("The ALJ's detailed examination of the objective medical evidence . . . indicates that his RFC determination is supported by substantial evidence and that it resulted from his 'careful consideration of the entire record.'").

## IV. CONCLUSION

For the reasons set forth above, and other good cause shown, the ALJ's decision to deny benefits is **AFFIRMED**. An appropriate order follows.

Dated: September 26, 2024

*Georgette Castner*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE